UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-196-GWU

INA M. LINVILLE, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Ina Linville brought this action to obtain judicial review of an unfavorable administrative decision terminating her Child's Supplemental Security Income (SSI) upon redetermination of her disabled status as an adult. The case is before the court on cross-motions for summary judgment.[1]

## LAW APPLICABLE TO CHILD'S SSI BENEFITS

As of 1996 strict standards for child's SSI claims were adopted. The Welfare Reform Act, P.L. No. 104-193, 110 Stat. 2105, provides that:

> An individual under the age of eighteen (18) shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months.

---

[1] Pursuant to Local Rule 83.11(c), the case is being decided on the written pleadings.

Thus, a child's SSI claim can be granted now only if there is a "marked and severe functional limitation(s)." The impairment must meet, medically equal, or functionally equal in severity one of the Listing of Impairments (LOI) found at 20 C.F.R. Part 404, Subpart P, Appendix 2. 20 C.F.R. § 416.924.

The implementing regulations require the agency to determine if the child's impairment(s) meet any LOI sections found at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924. If this step is not satisfied, the fact finder is required to consider limitation of specific functioning, broad areas of development or functioning, episodic impairments, and limitations related to medication effects to determine "functional equivalence" to the LOI. 20 C.F.R. § 416.926a. Functional equivalence is established if the child has one area of extreme functional limitations (i.e., very serious interference with functioning) or two areas of marked limitation (i.e., serious interference with functioning). Id.

**PERIODIC REVIEWS FOR DISABLED CHILDREN**

The regulations provide for periodic review of continuing eligibility for Child's SSI benefits. 20 C.F.R. § 416.994a(a).

The agency first determines if there has been "medical improvement," or any decrease in the medical severity of the impairment(s) present at the time he was most recently determined to be entitled to benefits. 20 C.F.R. § 416.994(a)(1), (c).

Even if there is no medical improvement, benefits will be terminated if substantial evidence shows that based on new or improved diagnostic techniques

or evaluations, the impairment is not considered as disabling as it once was, or when substantial evidence demonstrates that any prior disability decision was in error. 20 C.F.R. § 416.994a(e).

A claimant's benefits may also be terminated due to improper activity or negligence on his part. 20 C.F.R. § 416.994a(f).

At any rate, once a claimant reaches 18 years of age, his claim becomes subject to a new redetermination under adult standards for disability, using the rules for determining initial eligibility, rather than any medical improvement standard. 20 C.F.R. § 416.987 (2002).

**ADULT STANDARDS**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?

If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into

account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

> established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The procedural history reveals that Linville was awarded Child's SSI on a July, 2000 application. (Tr. 36). In 2005, having attained the age of 18, the plaintiff underwent a review of her disability status under the adult standards pursuant to 42 U.S.C. § 1382c. (Tr. 15). The plaintiff was found to be not disabled under the adult disability standards and this appeal was taken to federal district court. (Tr. 15-21).

In the denial decision, the Administrative Law Judge (ALJ) concluded that Linville, an 18-year-old woman with a high school education and no past relevant work history, suffered from impairments related to a learning disorder/borderline intellectual functioning. (Tr. 17, 20). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform work at all exertional levels, restricted from a full range by a limitation to simple, routine tasks. (Tr. 18). Based upon application of Rule 204.00 of the Medical-Vocational Guidelines, the claimant could not be considered totally disabled. (Tr. 21).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. The ALJ erred in evaluating whether Linville met the requirements of § 12.05(C) of the Listing of Impairments. However, the current record does not mandate an immediate award of SSI. Therefore, the court must grant the plaintiff's summary judgment motion, in

so far as it seeks a remand of the action for further consideration, and deny that of the defendant.

Linville argues that the ALJ erred in concluding that she did not meet the requirements of § 12.05(C) of the Listing of Impairments concerning mental impairments. This Listing requires a claimant to produce: “a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.” 20 C.F.R., Part 404, Subpart P, App. 1, § 12.05(C). The regulations further provide that: “Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R., Part, 404, Subpart P, App. 1, § 12.05. Thus, to satisfy the requirements of § 12.05(C), a claimant must demonstrate an IQ in the appropriate range which was manifested in the developmental period as well as another mental or physical impairment.

In the present action, Psychologist Christopher Catt examined Linville on February 14, 2005, after she had attained the age of 18, and administered intelligence testing. This testing revealed a verbal IQ score of 71, a performance IQ score of 67 and a full scale IQ score of 66. (Tr. 561). Two of the three IQ scores were within Listing range. The federal regulations provide that "where more than one IQ is customarily derived from the test administered . . . the lowest of these is

used in conjunction with listing 12.05." 20 C.F.R. Chapter III, Part 404, Subpart P., Appendix 1, § 12.00(D)(6)(c). Catt indicated that these scores were "a valid representation of her current cognitive abilities." (Tr. 561). The examiner ultimately diagnosed mild mental retardation as well as a depressive disorder. (Tr. 563). The plaintiff relies upon these scores for her disability claim.

The ALJ rejected the scores, citing previous intelligence testing revealing IQ scores in the borderline to low average range, Linville's ability to earn a high school diploma, and Catt's observation that her intelligence appeared to be in the borderline range. (Tr. 18).

With regard to the other IQ scores, the undersigned notes that intelligence testing administered to the plaintiff in 1997 at the age of 10 revealed scores between 80 and 93, in the low average range. (Tr. 188). Intelligence testing at the age of 13 revealed IQ scores between 71-75, in the borderline range. (Tr. 202). However, both of these test administrations occurred well before the age of 16. The administrative regulations indicate that IQ testing results generally do not stabilize until the age of 16 and scores obtained between the ages of 7 and 16 are considered current for only four years. 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 1, § 112.00(D)(10). Thus, the earlier test administrations do not necessarily invalidate the later scores. While Linville did earn a high school diploma, she did so while in special education and in a Job Corps program which provided extensive assistance to her. (Tr. 628). Achievement testing results

obtained by Catt indicated only a second grade reading level, a fourth grade functioning level in spelling, and a third grade functioning level in arithmetic. (Tr. 562). These scores strongly contradict her formal level of education. Finally, while Catt did at one point state that she appeared to be of borderline intelligence (Tr. 561), he also indicated her IQ scores in the Listing range were valid and diagnosed mild mental retardation. The administrative regulations indicate that it is standardized tests which are essential to the adjudication of cases under § 12.05(C). 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 1 § 12.00(D)(6). Under these circumstances, the court concludes that the ALJ's finding that these scores were not valid was improper.

Linville must still establish the existence of another mental or physical impairment which imposes an additional and significant impairment. The current medical record does not establish the existence of a physical impairment imposing additional restrictions upon the plaintiff. Dr. Syamala Reddy noted a diagnosis of glaucoma. (Tr. 609-618). However, the doctor never imposed any functional restrictions relating to this condition. The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Such treating and examining sources of record as the staff at Appalachian Regional Healthcare (Tr. 309-330) and the staff at Knott County Family Healthcare (Tr. 331-409) did not impose physical limitations which

would support the existence of a physical impairment imposing additional and significant impairment. Therefore, the ALJ dealt properly with this issue.

The record does suggest that Linville might have another mental impairment which would meet the requirements of § 12.05(C). As previously noted, Catt diagnosed a depressive disorder in addition to mild mental retardation. (Tr. 563). The moderate restriction noted by the examiner in the area of dealing with stress could relate to this condition. (Id.). The record was reviewed by Psychologists Edward Stodola and Edward Ross, each of whom noted that the claimant had a medically-determinable mental impairment under the area of affective disorders. (Tr. 573, 598). Each reviewer identified a number of mental limitations including "moderate" restrictions in such areas as understanding, remembering and carrying out detailed instructions, maintaining attention and concentration, completing a normal workday and workweek without interruption from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, and responding appropriately to changes in the work setting. (Tr. 565-566, 590-591). Some of these restrictions would relate to the finding of an affective disorder. The ALJ did not address why he disagreed with the opinions of the medical reviewers on this issue. (Tr. 15-21). While these opinions were not binding on the ALJ, the administrative regulations recognize that these agency consultants are highly qualified professionals in the area of social security disability and require that the ALJ explain the weight given to these opinions unless

the opinion of a treating source is given controlling weight. 20 C.F.R. § 416.927(f)(2)(i) and (ii). In this action, controlling weight was not given to a treating source and, so, the ALJ erred. Therefore, a remand of the action for further consideration is required.

The undersigned concludes that the administrative decision should be reversed and the action remanded to the Commissioner for further consideration. Therefore, the court must grant the plaintiff's summary judgment motion and deny that of the defendant. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 10th day of September, 2008.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

**Signed By:**

***G. Wix Unthank*** GWU

**United States Senior Judge**